UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| JAMES CROUD AS THE TRUSTEE FOR THE NEXT OF KIN OF DAVID CROUD,<br><br>Plaintiff,<br><br>v.<br><br>ST. MARY'S MEDICAL CENTER, DR. WILLIAM K. GITAR, AND UNKNOWN/UNNAMED HOSPITAL STAFF, CITY OF DULUTH, OFFICER SHANA HARRIS, OFFICER CHAD NAGORSKI, OFFICER GREGORY HAMANN, OFFICER TONY RADLOF, SERGEANT DAVID GREEMAN, ALL IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES,<br>Defendants. | Civil Action No. 08-5372 PJS/JJK<br><br>COMPLAINT FOR DAMAGES AND OTHER RELIEF<br><br>JURY TRIAL DEMANDED UNDER FRCP 38(b) |

## INTRODUCTION

Now comes the Plaintiff James Croud, by and through the undersigned counsel, for his Complaint against Defendants, hereby states and alleges as follows:

1. This is action for money damages for the wrongful death of David Croud ("Croud") results from the actions of St. Mary's Medical Center, Dr. Gitar and other unknown/unnamed hospital staff (collectively "St. Mary's Defendants"), the City of Duluth, Officer Shana Harris, Officer Chad Nagorski, Officer Gregory Hamann, Officer Tony Radloff and Sergeant David Greeman in their individual and official capacities



SCANNED
OCT 0 6 2008
U.S. DISTRICT COURT ST. PAUL

1

(collectively "Police Defendants"), acting in concert to use unconstitutionally excessive force and unreasonable restraints leading to Croud's death.

2. At all times material herein, the individual police Defendants were on-duty officers employed by the city of Duluth, and the individual hospital staff Defendants were employed by St. Mary's Medical Center. The conduct of the Police Defendants and the St. Mary's Defendants acting jointly and in concert with the Police Defendants by using unnecessary and excessive force on Croud in violation of his well-settled federal civil rights in violation of 42 U.S.C. §§ 1983, 1985 and 1986 contributed to the death of Croud.

3. This action also seeks money damages for Croud's wrongful death as a direct result of negligence by St. Mary's Medical Center, Dr. Gitar and other unknown/unnamed hospital staff for failing to comply with the standards of acceptable medical and nursing practice in providing care and treatment to David Croud.

## PARTIES AND JURISDICTION

4. James Croud brings this action, as court-appointed Trustee for the Estate of David Croud, pursuant to 42 U.S.C. §§ 1983, 1985, 1986 and 1988, the Fourth, Fifth and Fourteenth Amendments of the Constitution of the United States, 28 U.S.C. §§ 1331, 1343 and 1391(b), and Minn. Stat. §573.02. The aforementioned Federal statutory and constitutional provisions confer original jurisdiction of this Court over this matter. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over the related

2

state law claims in that they are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

5. The amount in controversy exceeds $75,000, excluding interests and costs.

6. Plaintiff James Croud and decedent David Croud were, at all times material herein, citizens of the United States and residents of St. Louis County, State of Minnesota. Plaintiff James Croud has been appointed Trustee for the next-of-kin of David Croud pursuant to the Minnesota Wrongful Death Act, Minn. Stat. §573.02. Decedent David Croud was a Native American enrolled member of the White Earth Band of Ojibwa.

7. Defendant St. Mary's Medical Center is a non-profit corporation duly organized and/or existing under the laws of the State of Minnesota. Defendant City of Duluth is a municipal corporation organized and/or existing under the laws of the State of Minnesota. At all times material herein, the individual Police Defendants were on-duty police officers employed by the City of Duluth and its Duluth. The individual Police Defendants are sued in their individual and official capacities. At all times material herein, the individual hospital staff Defendants were employed by St. Mary's Medical Center and were directly involved in providing medical treatment to Croud. They are sued in their official and individual capacities. Plaintiff likewise bases all applicable and appropriate claims on the doctrine of respondeat superior or vicarious liability as to Defendant City of Duluth and Defendant St. Mary's.

**FACTUAL CONTEXT**

8. Defendant Officer Shana Harris ("Harris") witnessed David Croud, a generally healthy, twenty-nine year old Native American man she had met previously, demonstrating what she termed "odd behavior" in front of a Duluth casino on the evening of October 12, 2005. Harris called on the radio asking for another available squad to come handle Croud, Defendant Officer Chad Nagorski ("Nagorski") was the first to respond, followed by Defendant Officer Gregory Hamann ("Hamann").

9. Croud was intoxicated. Later tests revealed his blood alcohol level as .31.

10. Defendants Nagorski and Hamann approached Croud, and according to multiple witnesses, rammed him against a stone wall, before Nagorski threw him to the ground. Multiple witnesses classified Croud's behavior before he was thrown to the ground as not in any way aggressive. One witness describing police conduct asserted he could not "over-emphasize the amount of violence..."

11. A witness said that while Croud was on the ground, police kneed him in the kidneys and pushed his face on the sidewalk, clearly trying to hurt him. Defendant Hamann then handcuffed Croud and sat him up after a few minutes on top of him according to a witness.

12. Defendants Hamann and Nagorski saw significant blood on Croud's face after Hamann sat him up, with one witness describing Croud's face as looking like "pulp."

13. Defendants Nagorski and Hamann then attempted to force Croud into the squad car, by pushing and hitting him according to a witness. Hamann then called for a Taser in order to get Croud into the car. Nagorski then struck Croud in the peroneal with his knee repeatedly, eventually getting him halfway in the car.

14. Around this time, some combination of Defendants Harris, Nagorski and Sergeant David Greeman ("Greeman") successfully got Croud all the way into the car. According to a witness, Croud, already mostly in the car, was Tased while the Defendants tried to finish forcing him into the car. Investigator Shawn Padden ("Padden") stated that Harris affirmed to him that she had Tased Croud.

15. According to Defendant Hamann, Defendant Greeman asked for a facemask to prevent Croud from spitting blood, and Defendant Officer Tony Radloff ("Radloff") attached it. The facial restraint covered Croud's mouth with solid material and the rest of his head with a netting-type material.

16. Defendant Hamann drove Croud to Defendant St. Mary's, with Defendant Greeman following behind.

17. Once they arrived at St. Mary's, Defendants Greeman and Hamann were met by unnamed/unknown Defendants working as hospital security staff, along with one emergency medical worker. Croud did not want to get out of the police car, so Greeman applied a pain compliance control technique called a hypoglossal pressure point, which was unsuccessful. Greeman and Hamann, possibly assisted by hospital security staff, then "muscled" Croud out of the car and onto a wheelchair.

18. The Defendants brought Croud to the St. Mary's emergency department at approximately 6:00 p.m. on October 12, 2005, in accordance with their standard practice of bringing detainees in need of medical treatment to St. Mary's on even numbered days. The police planned to have Croud medically evaluated so that he could be cleared to go to jail or a detox facility, also standard practice.

19. Croud was still bleeding when he arrived at St. Mary's, and was still handcuffed and in facial restraint. Croud made repeated requests for the removal of the facial restraint.

20. While at St. Mary's, the police determined that Croud was resisting, so he was placed face down on a gurney with his hands cuffed behind his back at the behest of Defendants Hamann and Greeman. At least two unknown Defendants hospital security guards assisted in holding Croud down. The facial restraint was still in place when Croud was placed face down on the gurney.

21. St. Mary's security staff then placed restraints on Croud's ankles. Greeman kept his hand on Croud's head to keep him from moving on the gurney. At some point, Defendant Dr. Gitar apologized to Greeman for Greeman having to hold Croud down.

22. Once Croud was secured to the gurney, he was injected with ten mg. of Haldol, followed by five mg. more by 6:25 p.m by the same Defendant, unknown nurse. Defendant Greeman remembered some tension between Defendants unknown nurse and Gitar over the administration of Haldol.

23. At some point between the two injections, a doctor entered the room and cautioned against another injection for Croud before giving the initial injection a chance to work. This doctor said he would come back to check on Croud, but before he did so, Defendants unknown nurses gave Croud another injection. This combined dosing was three times greater than recommended.

24. Once Croud appeared to have calmed down, Defendant unknown St. Mary's security guard suggested repositioning Croud on his back and replacing his handcuffs with cloth restraints because Croud's wrists were turning blue.

25. Defendant Greeman did not reposition Croud or modify his restraints because he did not want to "fight" with the patient to get the handcuffs back on for later transportation to jail or a detox facility.

26. The Defendant emergency room physician in charge observed what was occurring but took no action.

27. Defendant unknown St. Mary's nurse remembers asking the police officers if the handcuffs or facemask could be removed, and was also told no.

28. Defendant nurse said she did not question the police further because she assumed that police were controlling Croud for safety reasons and would know when it was appropriate to stop restraining a patient.

29. A St. Mary's employee thought that hospital security staff would not have the authority to insist the police remove restraints or reposition the patient, but that nursing or medical staff would have that authority.

30. Croud was left in the room for approximately forty-five minutes, restrained on his stomach and hands cuffed behind his back, with Defendants Hamann and Greeman, as well as Defendants unknown hospital security staff, near the door according to Croud's inpatient record.

31. At approximately 6:55 p.m. a nurse entered the room and insisted that steps be taken to ensure Croud's safety, a request to which the police Defendants objected.

32. When the nurse checked on Croud, he was blue in the face and not breathing.

33. Croud was then positioned on his back and the handcuffs and facemask were removed.

34. Attempts to resuscitate Croud failed, and after being placed on life support, he died on October 18, 2005 when he was removed from life support.

35. The St. Louis County Medical Examiner's Office declared that Croud's death was caused by anoxic encephalopathy due to cardiopulmonary arrest caused by acute alcohol intoxication and Haldol administration.

36. The Minnesota Department of Health Office of Health Facility Complaints Investigative Report concluded that the hospital was "not in compliance with the Condition of Participation 42 CFR 482.13 regarding Patients' Rights."

37. This report, based on a review of Croud's medical record, hospital policy and interviews found that St. Mary's staff "did not adequately intervene to position the patient on his back or side [or] to request that his [restraints complied with] acceptable standards of practice."

38. The report also concluded that although Croud's respiratory system was in danger based on his positioning and restraints, St. Mary's staff did not direct the patient to be repositioned until 6:55 p.m., forty-four minutes after his admission.

39. Evidence in the record indicates St. Mary's insufficiently trained its staff. St. Mary's employees had inconsistent views on whether medical staff had the authority to order Croud repositioned or have his restraints removed. One employee interviewed was under the impression that medical staff did have such power, while multiple nurses concerned about Croud's situation dropped the issue after being informed of police objections.

40. St. Mary's Defendants knew or reasonably should have known that Croud had not only been drinking, but was acutely intoxicated. Multiple arresting officers made note of this fact, and the medical staff was aware Croud was brought for a medical evaluation so he could be transported to "detox."

41. St. Mary's Defendants knew or reasonably should have known that the amount of Haldol they dosed Croud with posed a danger to his life when coupled with alcohol. Police interviews indicate that there was "tension" between a nurse and doctor over the amount of Haldol to be administered. While it is St. Mary's practice to significantly overdose Haldol to patients beyond the recommended norms, Mr. Croud's inebriation should have changed this calculus.

42. St. Mary's Defendants knew or should have known the danger posed to Croud by his handcuffs, as evidenced by the fact that someone on the St. Mary's staff noticed Croud's wrists turning blue, but accepted the police recommendation to leave the

10

handcuffs on. The Health Facility Complaints Investigative report faulted St. Mary's for failing to intervene acceptably regarding Croud's restraints.

43. St. Mary's Defendants knew or reasonably should have known the danger posed to Croud by his facemask, as evidenced by a nurse asking the police whether or not it could be removed. The Health Facility Complaints Investigative report faulted St. Mary's for failing to intervene acceptably regarding Croud's restraints.

44. St. Mary's Defendants knew or reasonably should have known that Croud's positioning on the gurney posed a significant threat to his life as evidenced by Health Facility Complaints Investigative report which faulted hospital staff for failing to reposition Croud on his back or side in compliance with acceptable standards of medical practice.

45. St. Mary's Defendants were state actors acting under color of state law because for the purposes of 42 U.S.C. §§ 1983, 1985 and 1986 because they conspired and acted in concert with police to use excessive force by way of chemical and physical restraints on Croud. The St. Mary's Defendants acted as willful participants in joint activity with the Police Defendants.

46. The Police Defendants knew or reasonably should have known the danger posed to Croud by his handcuffs, as evidenced by the fact that someone on the St. Mary's staff noticed Croud's wrists turning blue and asked police if the handcuffs could be removed.

47. The Police Defendants knew or reasonably should have known the danger posed to Croud by his facemask, as evidenced by the fact that a nurse asked them whether or not it could be removed.

48. The Police Defendants knew or reasonably should have known that Croud's positioning and restraint on the gurney posed a significant threat to his life because the combination of his position, the restraints, his alcohol intoxication and the administration of large doses of Haldol would interfere with his ability to breathe.

49. On information and belief, the City of Duluth and its Police Department created a police community relations committee for the purpose of responding to and addressing complaints of police misconduct and complaints of racial biased policing. Said committee became inactive and was disbanded before the events the lead to Croud's death.

50. Defendants' actions deprived Croud of his right to be free from excessive force leading to his death and they were motivated by an unconstitutional state enforced custom. This is evidenced by hospital security staff collaborating with police to restrain Croud in accordance with their standard practice, and hospital medical staff deferring to police in contravention of the standards of acceptable medical and nursing practice in providing medical care for Croud. Additionally, the St. Mary's Defendants were state actors acting under color of state law because their actions were fairly attributable to the

state by providing medical care to an individual in police custody for whom the City of Duluth and its officers of the Duluth Police Department had a constitutional duty to provide adequate medical treatment and appropriate care, custody and control.

51.  James Croud, as Trustee for the Estate of his brother David Croud, demands a jury trial as to all issues of fact herein.

## Count I

### (42 U.S.C. § 1983:  Violations of Fourth, Fifth and Fourteenth Amendment Rights)

52.  Plaintiff repeats the allegations contained in Paragraphs 1 through 51.

53.  By the actions described above, Defendants the City of Duluth and Officer Shana Harris, Officer Chad Nagorski, Officer Gregory Hamann, Officer Tony Radloff and Sergeant David Greeman, St. Mary's, Dr. Gitar and other unknown/unnamed hospital staff, acting under color of state law, violated and deprived Croud of his clearly established and well-settled civil rights by acting in concert to use excessive force and unreasonably restrain him, causing Croud's wrongful death in violation of the Fourth and Fourteenth Amendments.

54. Moreover, the conduct of Defendants as set forth hereinabove was shocking to the conscience and constituted a violation of the decedent's Fifth and fourteenth Amendment rights to due process of law.

55. Additionally, Defendants violated the decedent's Fourth, Fifth and Fourteenth Amendments to the U.S. Constitution, and 42 U.S.C. §1983 by failing to prevent each other from violating Croud's constitutional rights.

## Count II

### (42 U.S.C. § 1983: Monell Liability for Violation of Fourth and Fourteenth Amendment Rights)

56. Plaintiff repeats the allegations contained in Paragraphs 1 through 55.

57. Defendant Duluth had and presently has customs, policies, practices and procedures of negligently and inadequately hiring, training, supervising and retaining staff, particularly the Police Defendants herein. Said negligent and inadequate hiring, training, supervision and retention of said Police Defendants gave rise to the constitutional violations set forth herein.

58. Defendant Duluth condoned, ratified, approved and/or otherwise acquiesced in the use of excessive force against and improper restraint of individuals including Croud; and had and presently have customs, policies, practices and procedures that condone the use of excessive force and improper restraint such as that used on and directly resulting in Croud's death.

## Count III

**(42 U.S.C. § 1983: St. Mary's Medical Center's Monell Liability for Violation of Fourth and Fourteenth Amendment Rights)**

59. Plaintiff repeats the allegations contained in Paragraphs 1 through 58.

60. Defendant St. Mary's Medical Center had and presently has customs, policies, practices and procedures of negligently and inadequately hiring, training, supervising and retaining staff, particularly the St. Mary's Defendants herein. Said negligent and inadequate hiring, training, supervision and retention of said St. Mary's Defendants gave rise to the constitutional violations set forth herein.

61. Defendant St. Mary's Medical Center condoned, ratified, approved and/or otherwise acquiesced in the use of excessive force against and improper restraint of individuals including Croud; and had and presently have customs, policies, practices and procedures that condone the use of excessive force and improper restraint such as that used on and directly resulting in Croud's death.

## Count IV

**(42 U.S.C. §§ 1985 and 1986: Conspiring to deprive civil rights and failing to prevent said conspiracy)**

62. Plaintiff repeats the allegations contained in Paragraphs 1 through 61.

63.     Defendants violated 42 U.S.C. §§1985 and 1986 by conspiring together to deprive Croud, a Native American man, of his civil rights by using excessive force and unreasonably restraining him and directly causing his wrongful death. Therefore, this conspiracy to violate civil rights was carried out in part on based on racial animus.

## Count V

### (Minnesota Wrongful Death Act)

64.     Plaintiff repeats the allegations contained in Paragraphs 1 through 63.

65.     Defendants City of Duluth, St. Mary's Medical Center, Dr. Gitar and unknown staff members owed Croud a duty of care, a standard which they violated through their gross negligence and/or deliberate indifference to the rights and safety of decedent while he was within their care custody and control, and through this violation proximately and actually caused Croud's death.

66.     City of Duluth, St. Mary's and its individual Defendant employees caused Croud's death as shown by the Medical Examiner's Report which indicates Croud's death was the result of combining acute alcohol intoxication and Haldol administration. This dosing, along with the restraints used on Croud and his positioning on the gurney deviated from the applicable standard of care which resulted in Croud's wrongful death.

## **CLAIM FOR DAMAGES AND OTHER RELIEF**

67. Wherefore, as a direct and proximate result of the acts and omissions of the above-named Defendants, Croud wrongfully died, leaving his four children without a father, and therefore entitling his estate to a compensatory damages award in excess of $75,000.

68. Plaintiff is also entitled to punitive damages in an amount to be determined at trial after appropriate notice and motion, if required. Further such damages are claimed as a matter of statutory law under 42 USC Section 1988 and are properly awardable against the Defendants and are hereby claimed as a matter of federal common law pursuant to Smith v. Wade, 461 U.S. 30 (1983), and, as such, are not subject to the pleading requirements or the differing standard of proof set forth in Minn. Stat. § 549.20.

WHEREFORE, Plaintiff James Croud, as Trustee for the Estate of David Croud, prays for judgment against each and all of the Defendants as follows:

a. For entry of judgment herein in favor of Plaintiff, and against Defendants, and awarding him general and punitive damages in excess of $75,000.00 and in an amount to be determined at trial;

b. For entry of judgment herein in favor of Plaintiff, and against Defendants, awarding him costs, fees, disbursements, including reasonable attorney's fees, under 42 U.S.C. § 1988 and other applicable law and prejudgment and post judgment interest;

c. For Declaratory and Injunctive Relief against the Defendants; and,

    d.  For such other and further relief as this Court deems just and equitable.

Respectfully submitted:

10/06/2008

By: _____
Albert T. Goins, # 126159
301 Fourth Avenue South
378 Grain Exchange Building
Minneapolis, MN 55415
(612) 339-3848 Main
(612) 339-3853 Facsimile
-and-
John C. Goetz, # 0035634
Schwebel, Goetz & Sieben
5120 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 377-7777
-and-
ACLU OF MINNESOTA
Teresa Nelson (MN #269736)
450 North Syndicate Street,
Suite 325
St. Paul, MN 55104
Telephone: (651) 645-4097

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| JAMES CROUD AS THE TRUSTEE FOR THE NEXT OF KIN OF DAVID CROUD,<br><br>Plaintiff,<br><br>v.<br><br>ST. MARY'S MEDICAL CENTER, DR. WILLIAM K. GITAR, AND UNKNOWN/UNNAMED HOSPITAL STAFF, CITY OF DULUTH, OFFICER SHANA HARRIS, OFFICER CHAD NAGORSKI, OFFICER GREGORY HAMANN, OFFICER TONY RADLOF, SERGEANT DAVID GREEMAN, ALL IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES,<br>Defendants. | Civil Action No. _____<br><br>AFFADAVIT OF EXPERT REVIEW PUSUANT TO MINN. STAT. SECTION 145.682 |

STATE OF MINNESOTA     )
                       ) ss.
COUNTY OF RAMSEY       )

Albert Turner Goins, being first duly sworn, deposes and states:

1. My name is Albert Turner Goins. I am one of plaintiff's counsel. I am admitted to practice in this court. I make this Affidavit in support of Plaintiff's Complaint for Damages and other relief. I make this Affidavit of my own personal knowledge, am at least 18 years of age and of sound mind, and if called to testify would and could testify competently hereto.

2. I have reviewed the facts of this case with a medical expert who is licensed by the state of Minnesota as a Physician and Surgeon, and is certified by the American

Board of Medical Specialties as an Emergency Medicine specialist. His medical license and ABMS Emergency Medicine certification qualify him to provide expert testimony for which his opinions are likely to be admissible at trial. In the opinion of this expert, one or more of the St. Mary's defendants deviated from the applicable standard of care and by that action caused the decedent David Croud's death.

FURTHER AFFIANT SAYETH NOT.

Dated: October 6, 2008

s:/ Albert Turner Goins

Subscribed and sworn to before me this
6th day of October, 2008

s:/
Notary Public
State of Minnesota
My Commission Expires Jan. 31, 2011



MOLLY SUE MILLER
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan. 31, 2011